UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES M. HINKLEY,

               Plaintiff,

     v.

ELDON VAIL, SCOTT RUSSELL,
KERRY ARLOW, JEFF CARLSEN,
STEVE DEMARZ, JOHN AND JANE
DOES 1-40,

               Defendants.

CASE NO. C12-5969 RBL/KLS

ORDER TO AMEND OR SHOW
CAUSE

       Before the Court for review is Plaintiff's complaint.  ECF No. 4.  Plaintiff also filed a special request for discovery (ECF No. 5) and motion for the appointment of counsel (ECF No. 6).  The Court will not direct service of Plaintiff's complaint at this time because it is deficient, as is explained in further detail below.  However, Plaintiff will be given an opportunity to amend his complaint.  His requests for discovery and the appointment of counsel are denied.

**DISCUSSION**

       Under the Prison Litigation Reform Act of 1995, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b)(1), (2) and 1915(e)(2); See

1  *Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).   A complaint is legally frivolous when it

2  lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Franklin v.*

3  *Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

4         In determining whether a complaint states a claim, the Court looks to the pleading

5  standard under Federal Rule of Civil Procedure 8(a).  Under 8(a), a complaint must contain "a

6  short and plain statement of the claim showing that the pleader is entitled to relief."

7  Fed.R.Civ.P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed

8  factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

9  me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)

10  (citing *Bell Atlantic*, 550 U.S. at 555).

11         Although complaints are to be liberally construed in a plaintiff's favor, conclusory

12  allegations of the law, unsupported conclusions, and unwarranted inferences need not be

13  accepted as true.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).   Neither can the court supply

14  essential facts that an inmate has failed to plead. *Pena*, 976 F.2d at 471 (quoting *Ivey v. Board of*

15  *Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

16  **I.     Complaint Allegations**

17         The Court has liberally construed and summarized Plaintiff's 83 page complaint.  The

18  complaint is lengthy, disjointed, and confusing.  The majority of Plaintiff's allegations relate to

19  the conditions of his confinement from April 12, 2011 through April 15, 2011.  During this time,

20  Plaintiff was held in a "dry cell" while it was being determined if he had any illegal drugs in his

21  system or possession.  Documents attached to the complaint indicate that Plaintiff was

22  investigated for bringing drugs into the Washington Corrections Center (WCC) through his

23  mother during an extended family visit.  He received eight infractions from this incident.  See

24  e.g, ECF No. 4-3, p. 15.

1    Plaintiff complains that the temperature in the dry cell was not correctly maintained,

2    medical personnel did not check on him every eight hours, log books were incorrectly kept, he

3    was not given a bible or anything else to read, he was not allowed to wash his hands, he was

4    denied a bathroom break (and consequently, urinated on himself and was forced to stay in the

5    soiled garment), and he was forced to provide more than the required amount of stool samples.

6    Plaintiff alleges that he was subsequently confined to the Intensive Management Unit (IMU) for

7    a year thereafter even though no drugs were found in his digestive system.  Plaintiff states that he

8    lost 600 days of earned early release time following his disciplinary hearing(s).  He alleges

9    generally that "all defendants 12 through 45" are parties to these complaints.

10    Plaintiff also claims that he is being forced to pay for medication, that his mother has

11    been "banned for life" from visiting him, that he was released into population "where DOC staff

12    had known a risk to his safety" and that he must now be housed in a protective custody unit, his

13    mail was withheld, and a female guard was on watch although Dry Cell watch staff are to be the

14    same sex as the prisoner.

15    Plaintiff further claims that "WCC's correctional staff" subjected him to a number of

16    infractions and he was denied due process during one or several disciplinary hearings.  He also

17    states, however, that he has filed a personal restraint petition in the Washington Court of Appeals

18    (COA No. 30812-0-III) "on all the infractions."

19    Plaintiff also appears to be claiming retaliation by staff members after the "incident's

20    [sic] on April 12, 2011."  He states that staff member Demarz withheld his address book and that

21    other unidentified staff withheld his legal paperwork and "beads."

22    In a separate document entitled "cause of action", Plaintiff lists each named defendant or

23    Doe defendant in separate paragraphs and alleges generally, in identical language as to each

24    defendant, that he or she violated Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights

ORDER - 3

1    between April 12, 2011 and April 15, 2011 by allowing him to be "tortured, acting deliberate

2    indifferent to several of his basic human needs and disregard to his health and safety by

3    subjecting him to humiliation in addition to pain, …".  See e.g., ECF No. 4-1, p. 38.  He repeats

4    these same general allegations for 40 defendants.

5         Plaintiff's complaint fails to provide "a short and plain statement of the claim" as

6    required by Rule 8.  Instead of presenting "simple, concise, and direct" averments as required by

7    Rule 8(d)(1) of the Federal Rules of Civil Procedure, the 83-page complaint contains far more

8    narrative and verbiage than required to state a claim for relief.  In most areas, Plaintiff has also

9    failed to properly link his claims of constitutional violation with a particular defendant or

10   defendants.

11        The Court will grant Plaintiff an opportunity to file an amended complaint.  In the

12   amended complaint, Plaintiff must write out short, plain statements telling the Court (1) the

13   constitutional right Plaintiff believes was violated; (2) name of the person who violated the right;

14   (3) exactly what that individual did or failed to do; (4) how the action or inaction of that person

15   is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury

16   Plaintiff suffered because of that person's conduct.  See *Rizzo v. Goode*, 423 U.S. 362, 371–72,

17   377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).  If the person named as a defendant was a supervisory

18   official, Plaintiff must either state that the defendant personally participated in the constitutional

19   deprivation (and tell the Court the five things listed above), or Plaintiff must state, if he can do so

20   in good faith, that the defendant was aware of the similar widespread abuses, but with deliberate

21   indifference to Plaintiff's constitutional rights, failed to take action to prevent further harm to

22   Plaintiff and also state facts to support this claim. See *Monell v. New York City Department of*

23   *Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

24

1    Plaintiff must repeat this process for each person he names as a defendant, including the

2    "John Doe" and "Jane Doe" defendants. If Plaintiff fails to affirmatively link the conduct of each

3    named defendant with the specific injury suffered by Plaintiff, the claim against that defendant

4    will be dismissed for failure to state a claim.  Conclusory allegations that a defendant or group of

5    defendants have violated a constitutional right are not acceptable and will be dismissed.

6    In the following paragraphs, the legal standards that appear to apply to his claims are set

7    forth.  Plaintiff should carefully review the standards and amend only those claims that he

8    believes, in good faith, are cognizable.

9    **II.    Legal Standards**

10    **A.    First Amendment**

11    **(1)    Retaliation**

12    Within the prison context, a viable claim of First Amendment retaliation entails five basic

13    elements: (1) an assertion that a state actor took some adverse action against an inmate (2)

14    because of (3) that prisoner's protected conduct, and that action (4) chilled the inmate's exercise

15    of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

16    correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  Prison

17    staff may not retaliate against inmates for exercising their constitutional rights to file lawsuits

18    and grievances.  *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1983); *Barnett v. Centoni*, 31 F.3d 813

19    (9th Cir. 1994); *Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995); *Rhodes*, 408 F.3d 559 (9th Cir.

20    2005).

21    Plaintiff alleges generally that staff members retaliated against him after April 12, 2011.

22    Plaintiff must identify the constitutionally protected activity in which he was engaged, describe

23    the adverse action that was taken against him because he was engaging in the protected activity,

24    name the person or persons who took the adverse action against him, and describe how the

1    adverse action affected his ability to continue his First Amendment activity.  Plaintiff must also

2    describe how the adverse action taken against him did not otherwise legitimately advance a

3    penological goal.

4                    **(2)    Access to Courts**

5            The due process clause of the United States Constitution guarantees prisoners the right of

6    meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d

7    72 (1977).  This right of access imposes an affirmative duty on prison officials to assist inmates

8    in preparing and filing legal papers, either by establishing an adequate law library or by

9    providing adequate assistance from persons trained in the law.  *Id*. at 828.  A prisoner must show

10   some actual injury resulting from a denial of access in order to allege a constitutional violation.

11   *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).  An actual injury

12   consists of some specific instance in which an inmate was actually denied meaningful access to

13   the courts.  *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.1989).

14           Although Plaintiff seems to imply that denial of access to his address book and/or other

15   legal papers hindered his access to court, he does not explain how.  Without further explanation,

16   the complaint fails to state a cause of action.

17                   **(3)    Denial of Mail Privileges**

18           Plaintiff alleges that his mail was withheld from him while he was on dry cell watch from

19   April 12, 2011 until April 15, 2011, and thereafter, until April 22, 2011.  Prison or jail inmates

20   have a First Amendment right to send and receive mail.  *Pell v. Procunier*, 417 U.S. 817, 824, 94

21   S.Ct. 2827 (1974).  A prisoner is entitled to due process if an inmate is denied the right to send or

22   receive mail.  *Procunier v. Martinez*, 416 U.S. 396, 417, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974),

23   overruled on other grounds, *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d

24   459 (1989). When prison or jail officials reject mail, the inmate has a right to notification of that

1   rejection and an opportunity to respond because a jail's decision to censor or withhold mail

2   triggers minimal procedural due process. *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir.2009).

3          However, a regulation that impinges on First Amendment rights "is valid if it is

4   reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

5   In determining whether a prison regulation is reasonably related to a legitimate penological

6   interest, the court should consider the following factors: (1) whether there is a valid, rational

7   connection between the regulation and the interest used to justify the regulation; (2) whether

8   prisoners retain alternative means of exercising the right at issue; (3) the impact the requested

9   accommodation will have on inmates, prison staff, and prison records generally; and (4) whether

10  the prisoner has identified easy alternatives to the regulation which could be implemented at a

11  minimal cost to legitimate penological interests. See *Shaw v. Murphy*, 532 U.S. 223, 229 (2001);

12  *Turner*, 482 U.S. at 89-91; *Morrison v. Hall*, 261 F.3d 896, 901 (9th Cir.2001).

13         Based on Plaintiff's allegations, the Court is unable to determine if he has stated a viable

14  claim.  Plaintiff does not allege that his mail was rejected or that he was denied the right to send

15  mail.  He alleges, instead, that he was not given his mail while he was in the dry cell and for a

16  week thereafter.  It is not clear if Plaintiff is claiming a violation of his constitutional rights by

17  this delay or if he is claiming that his mail was withheld pursuant to an unconstitutional policy.

18  He may amend his complaint with regard to this claim and should provide additional facts, from

19  which the Court may determine whether he has stated a viable claim.

20                       **B.      Fourth Amendment**

21         The Fourth Amendment's protection against unreasonable searches extends to

22  incarcerated prisoners. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir.1988) (citing *Bell v.*

23  *Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).  In determining the

24  reasonableness of a search under the Fourth Amendment "[c]ourts must consider the scope of the

particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559.  The reasonableness of a prisoner search is determined by reference to the prison context.  *Michenfelder*, 860 F.2d at 332.  "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 79, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited. *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir.1993); see also *Michenfelder*, 860 F.2d 328 (visual body-cavity searches of male inmates conducted within view of female guards held constitutional).

Plaintiff alleges generally that all of the defendants violated his Fourth Amendment rights.  However, it is not at all clear who, what, when, and how this occurred.  Plaintiff must provide more specific allegations before the Court may determine whether he has stated a claim for the violation of his Fourth Amendment rights.

**C.  Eighth Amendment**

**(1)  Conditions of Confinement**

Prisoners claiming Eighth Amendment violations based on conditions of confinement are required to satisfy both an objective and subjective component to the claim.  *Hudson v. McMillian*, 503 U.S. 1, 5-6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  Under the subjective component, a prisoner must demonstrate that prison officials were deliberately indifferent to the allegedly unconstitutional prison conditions.  *Wilson v. Seiter*, 501 U.S. 294, 302-304, 111 S.Ct. 2321 (1991).  A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

1  inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

2  inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994).

3     "Extreme deprivations are required to make out a conditions-of-confinement claim."

4  *Hudson,* 503 U.S. at 7.  Unrelated conditions, each of which may satisfy Eighth Amendment

5  requirements, cannot in combination amount to an Eight Amendment violation. *Toussaint v.*

6  *McCarthy*, 801 F.2d 1080, 1107 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987).  However,

7  related conditions may be combined in determining whether there is a constitutional violation if

8  they have a mutually enforcing effect that produces the deprivation of a single, identifiable

9  human need such as food, warmth or exercise.  For example, a low cell temperature at night

10  combined with a failure to issue blankets. *Wilson v. Seiter*, 501 U.S. at 304.

11     Conditions that might be deemed cruel and unusual if they were permanent features of a

12  prisoner's life may not offend the Constitution if they are imposed only temporarily.  "A filthy,

13  overcrowded cell and a diet of 'gruel' might be tolerable for a few days and intolerably cruel for

14  weeks or months." *Hutto v. Finney*, 437 U.S. 678, 696-87, 98 S.Ct. 2565, 57 L.Ed.2d 522

15  (1978).  Thus, "[t]he circumstances, nature, and duration of the deprivations are critical in

16  determining whether the conditions complained of are grave enough to form the basis of a viable

17  Eighth Amendment claim." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.2006).  "The more

18  basic the need, the shorter the time it can be withheld." *Hoptowit v. Ray,* 682 F.2d 1237, 1259

19  (9th Cir. 1982); see also *Anderson v. County of Kern*, 45 F.3d 1310, 1314, as amended, 75 F.3d

20  448 (9th Cir.1995)

21     Plaintiff provides some factual allegations relating to the conditions of his confinement in

22  the dry cell and at times, has identified the particular defendants (or Doe) defendants who were

23  involved in that treatment.  He must provide additional factual allegations, however, to properly

24  state an Eighth Amendment claim.  For example, he must describe the inhumane conditions to

1    which he claims he was subjected.  He should include facts relating to the nature, length, and

2    severity of the claimed deprivation, and explain what happened, when it happened, and who was

3    involved.  He must also allege how the individual or individuals involved were aware of a

4    substantial risk that he would suffer serious harm by the alleged deprivation.

5                      **(2)        Return to General Population**

6         Plaintiff also generally alleges that Defendants returned him to the general population

7    where his life was in danger.  Insufficient protection of a prisoner resulting in harm inflicted by

8    other inmates may violate a prisoner's constitutional rights.  *See White v. Roper*, 901 F.2d 1501,

9    1503–04 (9th Cir.1990).  When a prisoner is claiming he has not been afforded adequate

10   protection against violent acts by other inmates, the prisoner must show the prison officials' acts

11   were deliberately indifferent to the prisoner's vulnerability.  *Wilson v. Seiter*, 501 U.S. 294, 111

12   S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th

13   Cir.1991) (en banc), cert. denied, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).

14        Here again, under the deliberate indifference standard, Plaintiff must allege that prison

15   officials knew he faced a substantial risk of serious harm and they disregarded that risk by failing

16   to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970,

17   128 L.Ed.2d 811 (1994).  Thus, Plaintiff must describe which defendant or defendants acted with

18   deliberate indifference to his safety by moving him from protective custody to the general

19   population despite the fact that they knew he faced a substantial risk when they did so.

20                      **(2)        Lack of Medical Care**

21        It is not entirely clear if Plaintiff is alleging that he has not received or was denied proper

22   medical care.  To establish a constitutional violation under the Eighth Amendment due to

23   inadequate or denial of medical care, a plaintiff must show "deliberate indifference" by prison

24   officials to a "serious medical need."  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50

1   L.Ed.2d 251 (1976).  Deliberate indifference to a prisoner's medical needs is defined by the

2   Court as the "unnecessary and wanton infliction of pain."  *Id.*  Indifference proscribed by the

3   Eighth Amendment may be manifested by a prison doctor's response to the prisoner's need, by

4   the intentional denying or delaying access to medical care, or the intentional interference with

5   treatment once prescribed.  *Id.*  However, "[m]edical malpractice does not become a

6   constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106.

7       Plaintiff has not alleged a serious medical need or acts or omissions by a defendant(s)

8   sufficiently harmful to evidence deliberate indifference to serious medical needs.  See *Hudson v.*

9   *McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Estelle*, 429 U.S. at 106.  He

10  may amend his complaint to include these allegations, if they exist.

11      **D.    Fourteenth Amendment**

12      Plaintiff alleges generally that all of the named defendants and Doe defendants violated

13  his Fourteenth Amendment rights.  It is entirely unclear what Plaintiff is attempting to claim with

14  this statement.  Plaintiff does allege that he was not treated fairly at one or more of his

15  disciplinary hearings.  He also appears to allege that he should not have been transferred to

16  intensive management following his time in the dry cell.  The following standards are provided

17  for his review.

18      **(1)    Due Process - Disciplinary Proceedings/Good Time Credits**

19      Pursuant to the Fourteenth Amendment, minimal due process in a prison disciplinary

20  hearing requires: (1) advance written notice of the charges; (2) written statement by the fact

21  finders of the evidence relied upon and the reasons for disciplinary action; and (3) a qualified

22  right to call witnesses and present evidence.  *Wolff v. McDonnell*, 418 U.S. 539, 563-569, 94

23  S.Ct. 2963, 41 L.Ed.2d 935 (1974).  Due process also requires an impartial decision maker.  *Id.*

24  at 571.  Further, the requirements of due process are met if some evidence supports the decision

by the prison disciplinary committee.  *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).   However, confrontation and cross-examination in prison disciplinary proceedings are not a part of the minimal due process required because these procedures presented "greater hazards to institutional interests."  *Wolff*, 418 U.S. at 567-68.

Plaintiff alleges that he has filed a personal restraint petition in the Washington Court of Appeals (COA No. 30812-0-III) on all of his infractions and presumably, the loss of good time credits which resulted from his disciplinary hearing following the April 2011 investigation when he was accused of introducing contraband into the prison.

To the extent Plaintiff is attempting to bring a 1983 claim here for the loss of his good time credit, the claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).  A writ for habeas corpus "is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release."  *Heck*, 512 U.S. at 481; *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997).  Consequently, a prisoner's § 1983 challenge to disciplinary hearing procedures is barred if judgment in his favor would necessarily imply the invalidity of the resulting loss of good-time credits.  *Balisok*, 520 U.S. at 646, 117 S.Ct. 1584 (finding challenge to validity of procedures used to deprive prisoner of his good-time credits not cognizable under § 1983, because it necessarily implied invalidity of deprivation of his good-time credits); *see also Muhammad v. Close*, 540 U.S. 749, 751 (2004) (noting *Heck* applies in circumstances where administrative action taken against prisoner could affect credits toward release based on good time served).

A decision in Plaintiff's favor on this issue would necessarily imply the invalidity of his loss of good-time credits for the introduction of contraband.  Therefore, his § 1983 claim on this issue is barred.  Plaintiff indicates that this claim is pending in the Washington Court of Appeals.

1    Thus, he should continue to exhaust his state remedies on these issues prior to raising the same

2    issues in federal court.  *See* 28 U.S.C. 2254(b)(c) (Prisoners in state custody who wish to

3    challenge the length of their confinement in federal court by a petition for writ of habeas corpus

4    are first required to exhaust available state judicial remedies, either on direct appeal or through

5    collateral proceedings, by presenting the highest state court available with a fair opportunity to

6    rule on the merits of each and every issue they seek to raise in federal court.)  *See* 28 U.S.C. §

7    2254(b)(c); *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *Rose v. Lundy*, 455 U.S. 509 (1982);

8    *McNeeley v. Arave*, 842 F.2d 230, 231 (9th Cir. 1988).

9              **(2)      Due Process - Transfer to Intensive Management**

10            Typically, placement in segregated housing in and of itself does not implicate a protected

11   liberty interest.  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir.2003).  Inmates in Washington

12   do not have a protected liberty interest in maintaining favorable custody classifications.  *In re*

13   *Dowell*, 100 Wash.2d 770, 772–775, 674 P.2d 666 (1984); see also *Meachum v. Fario*, 427 U.S.

14   215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (19876) (transfer from general population to maximum

15   security is "within the normal limits or range of custody which the conviction has authorized the

16   State to impose," even when the conditions in maximum security are "substantially more

17   burdensome").

18            The placement of a prisoner in isolation or segregation as a result of disciplinary

19   proceedings is subject to *Wolff's* procedural protections if (1) state statutes or regulations

20   narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty

21   interest in question is one of "real substance."  *Sandin*, 515 U.S. at 477–87.  The procedural

22   protections afforded by the Due Process Clause adhere only when the disciplinary action

23   implicates a protected liberty interest in some "unexpected manner" or imposes an "atypical and

24

1  significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v.*

2  *Connor*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

3         Rather than invoking a single standard for determining whether a prison hardship is

4  atypical and significant, courts rely on a condition or combination of conditions or factors that

5  requires case by case, fact by fact consideration.  *Serrano*, 345 F.3d at 1078 (citing *Keenan v.*

6  *Hall*, 83 F.3d 1083, 1089 (9th Cir.1996), *opinion amended on denial of rehearing by* 135 F.3d

7  1318 (1998)).  Courts are to look to three guideposts by which to frame the inquiry: (1) whether

8  the challenged condition mirrored those conditions imposed upon inmates in administrative

9  segregation and protective custody; (2) the duration of the condition, and the degree of restraint

10  imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's

11  sentence.  *Serrano*, 345 F.3d at 1078 (citations omitted).

12         Plaintiff has not alleged that he had a legally protected liberty interest to be free from

13  placement in administrative segregation.  He has also not alleged that his segregation was

14  beyond the prison officials' discretion to impose or that the liberty in question was one of "real

15  substance."  In other words, there are no factual allegations from which it may be inferred that

16  Plaintiff's placement in the intensive management unit was atypical.  He may amend his

17  complaint to include facts relating to this claim, if they exist.

18  **E.      Failure to Follow Prison Regulations**

19         Plaintiff alleges generally that defendants failed to follow their own policies such as not

20  providing him with appropriate hygiene items and failing to keep proper logs.  There is no

21  liability under 1983 for violating prison policy.  *Cousins v. Lockyer,* 568 F.3d 1063, 1070 (9th

22  Cir. 2009) (quoting *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997)).  Therefore, to the

23  extent Plaintiff is attempting to state a stand-alone claim for violation of prison regulations, it is

24  not cognizable.

**III.     Use of Doe Defendants and Request for Discovery**

"The use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980). However, "where the identity of alleged defendants will not be known prior to the filing of a complaint, ... the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."  Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problems as those persons cannot be served with process in this action until they are identified by their real names.  Plaintiff is responsible for learning the names of the Doe defendants and providing that information to the Court as soon as possible in an amended pleading.

Plaintiff has filed a "special request for discovery" (ECF No. 5), asking the Court to direct the defendants to produce documents wherein, Plaintiff believes, the names of the correctional officers who were on watch during his dry cell incarceration may be found.  Plaintiff will have ample opportunity to seek the discovery of the Doe defendants in the normal course of discovery.  However, the Court will not order early discovery of the materials requested by Plaintiff when he has not yet presented a viable complaint.  Therefore, the motion for discovery (ECF No. 5) is **DENIED.**

**IV.     Request for Counsel**

Plaintiff has also filed a motion for the appointment of counsel.  ECF No. 6.  A district court has discretion under 28 U.S.C. 1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances.  See *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir. 1986).  This requires evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues

1    involved.  *See id.*  Neither of these factors is dispositive and both must be viewed together before

2    deciding on a request for counsel.  Having considered both these factors, the Court concludes

3    that exceptional circumstances requiring the appointment of counsel are not evident.

4        Although Plaintiff's complaint is overly long and suffers from deficiencies, Plaintiff has

5    demonstrated that he is able to articulate his claims in a clear fashion understandable to this

6    Court.  This case does not involve complex facts, or law. This case will not require the use of

7    experts or any other in-depth analysis or argument.  Plaintiff's incarceration does not increase the

8    complexity of his case. "Most actions require development of further facts during litigation and a

9    *pro se* litigant will seldom be in a position to investigate easily the facts necessary to support the

10   case.  If all that was required to establish successfully the complexity of the relevant issues was a

11   demonstration of the need for development of further facts, practically all cases would involve

12   complex legal issues."  *Wilborn*, 789 F.2d at 1331.

13       In addition, Plaintiff has made no showing that he is likely to succeed on the merits of his

14   claim.  Therefore, his motion for counsel (ECF No. 6) is **DENIED.**

15   **V.   Deadline to Amend**

16       Due to the deficiencies described above, the Court will not serve the complaint.  Plaintiff

17   may file an amended complaint **on or before January 4, 2013,** that shall cure, if possible, the

18   above noted deficiencies.  Alternatively, Plaintiff may show cause why this matter should not be

19   dismissed.

20       As explained above, the amended complaint must contain "a short and plain statement of

21   the claim showing that [Plaintiff] is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  **Plaintiff is advised**

22   **that he should make a short and plain statement of claims against the defendants.  He may**

23   **do so by listing his complaints in separately numbered paragraphs.  He should include facts**

24   **explaining how each defendant was involved in the denial of his rights.**  The amended

complaint shall be presented on the form provided by the Court.  The amended complaint must

be **legibly rewritten or retyped in its entirety**, it should be an original and not a copy, it may

not incorporate any part of the original complaint by reference, and it must be clearly labeled the

"Amended Complaint" and must contain the same cause number as this case.  Plaintiff should

complete all sections of the court's form.  Plaintiff may attach continuation pages as needed but

may not attach a separate document that purports to be his amended complaint.

An amended complaint supersedes the original complaint.  *Forsyth v. Humana, Inc.,* 114

F.3d 1467, 1474 (9th Cir. 1997) *overruled in part on other grounds, Lacey v. Maricopa

County,* 693 F.3d 896 (9th Cir. 2012).  Therefore, the amended complaint must be complete in

itself without reference to the prior or superseded pleading.  All causes of action alleged in the

original complaint that are not alleged in an amended complaint are waived.  *Forsyth,* 114 F.3d

at 1474.

The Court will screen the amended complaint to determine whether it contains factual

allegations linking each defendant to the alleged violations of Plaintiff's rights. The Court will

not authorize service of the amended complaint on any Defendant who is not specifically linked

to the violation of Plaintiff's rights.

If Plaintiff decides to file an amended civil rights complaint in this action, he is cautioned

that if the amended complaint is not timely filed or if he fails to adequately address the issues

raised herein no later than **January 4, 2013,** the Court will recommend dismissal of this action as

frivolous pursuant to 28 U.S.C. § 1915 and the dismissal will count as a "strike" under 28 U.S.C.

§ 1915(g).  Pursuant to 28 U.S.C. § 1915(g), enacted April 26, 1996, a prisoner who brings three

or more civil actions or appeals which are dismissed on grounds they are legally frivolous,

malicious, or fail to state a claim, will be precluded from bringing any other civil action or

appeal in forma pauperis "unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

**The Clerk is directed to send Plaintiff the appropriate forms for filing a 42 U.S.C. 1983 civil rights complaint and for service, a copy of this Order and the General Order. Plaintiff's motions (ECF Nos. 5 and 6) are DENIED.**

**DATED** this  3rd  day of December, 2012.

Karen L. Strombom
United States Magistrate Judge