UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES M. HINKLEY,

Plaintiff,

v.

ELDON VAIL, SCOTT RUSSELL,
KERRY ARLOW, JEFFREY L.
CARLSEN, STEVE DEMARS, JOHN
AND JANE DOES 1-32,

Defendants.

CASE NO. C12-5969 RBL/KLS

ORDER DENYING MOTION TO
COMPEL AND GRANTING CROSS-
MOTION FOR PROTECTIVE
ORDER

Before the Court is Plaintiff's Motion to Compel, in which Plaintiff raises issues regarding the withholding of confidential information.  ECF No. 58.  Plaintiff raised this issue in his prior Motion to Compel (ECF No. 41) but the Court did not rule on the issue because the parties had not yet conferred.  The parties have now conferred on the issue.  Defendants oppose the motion and move for a protective order.  ECF No. 68.

## BACKGROUND

Mr. Hinkley's moves to compel further response from Defendants Carlsen and DeMars to Mr. Hinkley's First Set of Interrogatories and Request for Production of Documents.  ECF No. 58.  Specifically, Mr. Hinkley disputes Defendant Carlsen's and DeMars' responses to No. 8 of Interrogatories & Request for Productions of Documents in which he asked the following of both defendants: "Did you believe Hinkley had drugs in him? Why or why not?  If you made note of this produce the document please."  *See* 41 at 22 and at 47.

Defendants contend that some of the documents responsive to this request include confidential information, which they withheld for safety and security reasons.  ECF No. 68-1, p. 2, Declaration of Jean E. Meyn (DEFS 66-74 filed UNDER SEAL).  According to Ms. Meyn, the parties discussed the confidential informant documents which had been withheld and Plaintiff clearly indicated that he wanted Defendants to produce the identities of the informants and all related documents.  *Id.* at 3.

Defendants Carlsen and DeMars provided supplementary responses which reduced the withheld documents to those relating to confidential informant information, identified as DEFS 66 to DEFS 74.   ECF No. 68, Exhibit 1, Declaration of Jean E. Meyn, Attachments A and B. The withheld documents were provided to the Court only for *in camera* review.  ECF No. 70 (SEALED DOCUMENT).

**FACTS**

Mr. Hinkley alleges that his Fourth, Eighth, and Fourteenth Amendment rights were violated when Defendants placed him on a dry cell watch in April, 2011 after an investigation that included tips from one or more confidential informants.  ECF No. 11.  Mr. Hinkley seeks the identification of any informant so that he may call them as witnesses at trial, in addition to refuting "probable cause" for placing him on dry cell watch. ECF No. 58 at 3 and 6.

Defendants Carlsen and DeMars conducted the investigation resulting in Mr. Hinkley's placement on dry cell watch.  The investigation began with tips from confidential informants that Mr. Hinkley's mother had brought him prohibited items to sell to other offenders, including prescription pills, eyeglasses, and hygiene items during an extended family leave visit in February, 2011.  ECF No. 44-1, DeMars Decl. at 7, ¶13 and at 23.  Defendant DeMars states that he completed an assessment to ensure that the information obtained from confidential informants

ORDER DENYING MOTION TO COMPEL AND
GRANTING CROSS-MOTION FOR PROTECTIVE
ORDER- 2

1    in Mr. Hinkley's case was reliable consistent with WAC 137-28-290(1)(f) ; WAC 137-28-300(7)

2    (establishing rules regarding confidential information in disciplinary hearings and providing that

3    the inmate will receive a summary and that the hearing officer must assure that the source of the

4    information is reliable and revealing the identity would jeopardize safety and security).  ECF No.

5    44-1, DeMars Decl. at 7, ¶12; s*ee also* Exhibit 1, Attachment C (DEFS 66-74 sealed and attached

6    to motion to seal).

7         Investigators then eavesdropped on phone calls between Mr. Hinkley and his mother

8    prior to an April extended family leave visit.  *Id.* at 23.  Based on the inventories of his mother's

9    possessions before and after the visit, a search of Mr. Hinkley's cell, in combination with the

10   phone calls, investigators had reasonable suspicion to place Mr. Hinkley on dry cell watch.  *Id.*;

11   *see also* ECF No. 44, 44-1 at 7-8, *see also* 68-1, Exhibit 2, Declaration of Timothy M. Thrasher

12   at ¶12.

13        Timothy M. Thrasher is the Chief of Investigative Operations for the DOC.  In his

14   declaration, Mr. Thrasher states that he has witnessed and/or investigated many serious attacks

15   by inmates on other inmates and staff caused by suspicions that an inmate was providing

16   information to staff about other inmates' conduct.  ECF No. 68, Exhibit 2, Declaration of

17   Timothy M. Thrasher, ¶ 7.  From his eighteen (18) years of prison experience, Mr. Thrasher has

18   also found that inmates who are suspected of sharing information with staff are at serious risk for

19   physical retribution and harm by other inmates who would choose to "teach them a lesson" about

20   reporting anything to DOC officials.  *Id.* at ¶¶ 3, 7.

21        According to Mr. Thrasher, DOC may need to place confidential informants or those

22   whom other inmates suspect are "snitches" into protective custody, which results in a more

23   restrictive custody situation than general population.  In addition, DOC may need to transfer a

24

ORDER DENYING MOTION TO COMPEL AND
GRANTING CROSS-MOTION FOR PROTECTIVE
ORDER- 3

"snitch" repeatedly to separate him from those who know he's provided information to investigations or from the inmate about whom he informed.  ECF No. 68, Exhibit 2, Thrasher Decl., ¶ 8.  The larger the number of inmates DOC must protect in this manner, the more and more burdensome and complex it becomes to track the separatees.  *Id.*  If the confidential information were revealed from Mr. Hinkley's investigation, it would add to that burden.  *Id.*

Mr. Thrasher states that even revealing the methods DOC uses to assess the credibility and reliability of informants would risk their safety.  ECF No. 68, Exhibit 2, Thrasher Decl., ¶ 9. Hence the redaction of the names from the forms would not protect the informant because conclusions could still be drawn from the remaining information on the form, which could lead to the identification of the informant(s) – such as the number of inmates who submitted information, whether the information was "first hand," the date or location from which it was provided.  In addition, the scores and check boxes about an informant would increase the risk of an attack against any suspected informant. *Id.*

Blank forms in the hands of an inmate or the public also pose a threat to effective investigations and the safety and security of the facility.  ECF No. 68, Exhibit 2, Thrasher Decl., ¶ 810.  These forms show the criteria used to evaluate confidential information and with it potential informants would be able to tailor their statements to investigators so they could create a higher (or lower) score and thereby have more control over how the information is acted upon by the investigator.  *Id.*  The forms could also be used in conjunction with the other records from an investigation and reveal how specific sources and types of information were weighed and scored in a particular investigation. *Id.*  Should these documents be widely produced to the general public or inmates, DOC's intelligence evaluation methods would be compromised and this would negatively impact DOC's ability to objectively evaluate confidential information in

1   investigating prison misconduct and criminal activity.  *Id.*  Mr. Thrasher states that if he or one of

2   his investigators found a copy of these forms in an inmate's possession during a search, the

3   forms would be seized because they pose a threat to the safety and security of the facility.  *Id.*

4        Mr. Thrasher states that he has reviewed the confidential informant documents (DEFS

5   66-74) and it is his opinion that they are the type of documents which he described in ¶¶ 9 and 10

6   of his declaration and that release of the documents would jeopardize the safety and security of

7   the confidential informants as well as the management of DOC prisons, including staff and other

8   offenders.  ECF No. 68, Exhibit 2, Thrasher Decl., ¶ 12.

9                                **DISCUSSION**

10       A party may file a motion to compel disclosure or discovery.  Fed. R. Civ. P. 37(a).  If

11  the court denies the motion, "the court may issue any protective order authorized under Rule

12  26(c)... ."  Fed. R. Civ. P. 37(a)(5)(B).  A court may issue a protective order forbidding

13  disclosure or discovery.  Fed. R. Civ. P. 26(c).

14       Mr. Hinkley argues that if the confidential information were faulty or fabricated then

15  Defendants did not have "probable cause" to place him on dry cell watch.  However, the same

16  "probable cause" standard applicable to a criminal suspect does not apply in the prison context.

17  For example, routine strip search procedures, including visual body cavity searches, are allowed

18  without individualized reasonable suspicion of maximum security inmates.  *Michenfelder v.*

19  *Sumner,* 860 F.2d 328 (9th Cir. 1988).  *See also, Hudson v. Palmer*, 468 U.S. 517, 522–523

20  (1983) (inmates' constitutional rights were not violated by random searches of inmate lockers

21  and cells to deter the possession of contraband in prison.)   In this case, Defendants state that

22  they followed Department of Corrections (DOC) policy by developing "reasonable suspicion" of

23  Mr. Hinkley secreting drugs in his body.  *See* ECF Nos. 44 and 44-1, Declaration of Steven

24

ORDER DENYING MOTION TO COMPEL AND
GRANTING CROSS-MOTION FOR PROTECTIVE
ORDER- 5

1  DeMars.  Thus, Defendants argue that revealing the identity of informant(s) is of little probative

2  value because the informant information merely served to "launch" the investigation – the

3  evidence compiled after receiving the tips constituted a sufficient basis for the dry cell

4  placement.  Defendants argue that this is particularly persuasive when one balances the risk of

5  safety to the informant(s) against the slight probative value of the information sought.  In

6  particular, Defendants point to the danger of being labeled a "snitch" in prison.  *See,*

7  *Valandingham v Bojorquez,* 866 F2d 1135 (9th Cir. 1988) (inmate stated cognizable § 1983

8  claim by alleging that staff had identified him as a "snitch" in front of other inmates).

9        Defendants also point out that, within the prison disciplinary process, the withholding of

10  informants' identities is not a constitutional violation.  *Zimmerlee v. Keeney*, 831 F.2d 183 (9th

11  Cir. 1987).   It is sufficient if prison staff assessed the credibility and reliability of the informant.

12  *Id.* at 187.  As noted above, Defendant DeMars states that he performed such an assessment as to

13  the informant information received in Mr. Hinkley's investigation.  ECF No. 44-1, DeMars Decl.

14  at 7, ¶12; s*ee also* ECF No. 68-1, Attachment C (DEFS 66-74 sealed and attached to motion to

15  seal).

16        Finally, the Court notes that the confidential informant sought by Mr. Hinkley as well as

17  the blank forms are exempt from disclosure under the Washington State Public Records Act:

18        The following investigative, law enforcement, and crime victim information is
       exempt from public inspection and copying under this chapter:
19        (1) Specific intelligence information and specific investigative records
       compiled by investigative, law enforcement, and penology agencies, and state
20        agencies vested with the responsibility to discipline members of any profession,
       and nondisclosure of which is essential to effective law enforcement or for the
21        protection of any person's right to privacy;

22  RCW 42.56.240(1).   The confidential informant information at issue here reveals not only the

23  criteria used to evaluate confidential information but, in conjunction with the other records from

24

ORDER DENYING MOTION TO COMPEL AND
GRANTING CROSS-MOTION FOR PROTECTIVE
ORDER- 6

1 | the investigation, would reveal how specific sources and types of information were weighed and

2 | scored in this particular investigation. Should this information be produced to the public, the

3 | Department's intelligence evaluation methods would be compromised.  ECF No. 68-1, Exhibit 2,

4 | Thrasher Decl., ¶¶ 9-10.  Washington's disclosure law also exempts documents which would risk

5 | the safety of witnesses.  RCW 42.56.240(2).  In addition to the evidence presented by the DOC

6 | Chief of Investigative Operations, courts have recognized the obvious risk of serious harm to any

7 | inmate known to be, or rumored to be, a "snitch."

8 | Accordingly, based on the risk of harm to the confidential informants and to the integrity

9 | of DOC investigations compared to the relatively low probative value of the information, the

10 | Court **ORDERS:**

11 | (1)      Plaintiff's motion to compel (ECF No. 58) is **DENIED.**

12 | (2)      Defendants' Motion for Protective Order (ECF No. 68) **GRANTED.**  The

13 | disclosure of DEFS 66-74 and any other discovery risking the identification of sources of

14 | confidential information is prohibited.

15 | (3)      The Clerk is directed to send a copy of this Order to Plaintiff and to counsel for

16 | Defendants.

17 | **DATED** this 24th day of July, 2013.

19 | Karen L. Strombom

20 | United States Magistrate Judge

ORDER DENYING MOTION TO COMPEL AND
GRANTING CROSS-MOTION FOR PROTECTIVE
ORDER- 7